AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**
U.S. District Court
District of Kansas

# UNITED STATES DISTRICT COURT
### for the
### District of Kansas

SEP 1 4 2023

Clerk, U.S. District Court
By_____Deputy Clerk

In the Matter of the Search of:  }
*(Briefly describe the property to be searched or identify the*  }
*person by name and address)*  }  Case No.   23-6241-GEB
  }
information associated with the following Google accounts:  }
brettmorgan8387@gmail; brettmorgan777@gmail.com;  }
brettmorgan0811@gmail.com; and dsmith8387@gmail.com as further
described in Attachment A.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

information associated with the following Google accounts:  brettmorgan8387@gmail; brettmorgan777@gmail.com; brettmorgan0811@gmail.com; and dsmith8387@gmail.com as further described in Attachment A.

located in the **DISTRICT OF KANSAS**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

✓ evidence of a crime;

✓ contraband, fruits of crime, or other items illegally possessed;

✓ property designed for use, intended for use, or used in committing a crime;

  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | production of child pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | possession of and access with intent to view child pornography |

The application is based on these facts:  See Attached Affidavit

✓ Continued on the attached sheet.

  Delayed notice of_____days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Travis Putrah, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 14 Sept 23 @ 3:20pm

_____
*Judge's signature*

City and state: Wichita, Kansas

HONORABLE GWYNNE E. BIRZER, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Accounts to Be Searched

This warrant applies to information associated with the following Google accounts:

    **a.**     **brettmorgan8387@gmail.com**

    b.     **brettmorgan777@gmail.com**

    c.     **brettmorgan0811@gmail.com**

    d.     **dsmith8387@gmail.com**

and collectively referred to as the **Target Accounts** which are stored at a premises owned, maintained, controlled, or operated by Google LLC ("Google" or "Provider"), headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Google receives legal process via their Law Enforcement Portal.

i

## ATTACHMENT B

## Particular Things to be Seized

**I.     Information to be disclosed by Google LLC, to the government:**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose to the government for each account or identifier listed in Attachment A the following information for the time period of account inception, to the date of the execution of the search warrant:

1.     All business records and subscriber information, in any form kept, pertaining to the Accounts, including:

     a.     Names (including subscriber names, usernames, and screen names);

     b.     Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

     c.     Telephone numbers, including SMS recovery and alternate sign-in numbers;

     d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

     e.      Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

     f.      Length of service (including start date and creation IP) and types of service utilized;

     g.      Means and source of payment (including any credit card or bank account number); and

     h.      Change history.

2.     All device information associated with the Accounts, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

3.     Records of user activity for each connection made to or from the Accounts, including, for all Google services, the date, time, length, and method of connection, data transfer volume, usernames, source and destination IP address, name of accessed Google service, and all activity logs.

4.     The contents of all emails and chat messages associated with the Accounts, including stored or preserved copies of emails or chat messages sent to and from the Accounts, draft emails, the source and destination addresses associated with each email or chat message, the date and time at which each email or message was sent or received, attachments to any e-mail or message sent or received, the size and length of each email, and true and accurate header information including the actual IP addresses of the sender and recipients of the emails.

5.     The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record.

6.     The contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses.

7.     All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

8.     The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft

messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history.

9. Any records pertaining to the user's contacts, including address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history.

10. Any records pertaining to the user's calendar(s), including Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history.

11. Payment information, including billing address, shipping address, and payment instruments, associated with any Google Pay, Google Wallet, or Google service used by the Account.

12. All records pertaining to communications between Google and any person regarding the Account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.     Information to be seized by the government:**

1. All information described above in Section I that constitutes contraband or evidence, fruits, or instrumentalities of violations of 18 U.S.C § 2251(a) – *Sexual Exploitation of Children* and 18 U.S.C. § 2252A(a)(5)(B) – *Possession of or Accessing with Intent to View Child Pornography*, collectively referred to as the "**Target Offenses**," for the time period of account inception, to the date of the execution of the search warrant, including the following:

a.   Messages, communications, records, and files associated with or attached to email or chat messages, and transactional data that constitute evidence of, or that may have been used to facilitate, or that were capable of being used to commit or further, violations of the **Target Offenses** and to create, access, or store evidence of such crimes.

b.   Images, videos, and other files depicting children fully or partially naked and/or engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

c.   Communications that pertain to or that are evidence of the production, advertisement, distribution, receipt, or possession of child pornography, or accessing with the intent to view child pornography, that involve the coercion of a minor, or that involve threatening or intimating language of any person consistent with cyberstalking.

d.   Information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

e.   Information indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner.

f.   Information indicating the Account owner's and user's state of mind as it relates to the crimes under investigation.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits,

vi

and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the HSI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**III.**     **Directions on production of child sexual abuse imagery by Google:**

     1.    Pursuant to Google's Law Enforcement Portal, any legal request that requests that Google produce content that includes child sexual abuse imagery should include detailed directions from the court as to how Google should handle the production.   As such, Notwithstanding Title 18, United States Code, Section 2252A, Google shall disclose responsive data, if any, by delivering encrypted files through Google's Law Enforcement Request System.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
FOLLOWING GOOGLE ACCOUNTS:

**Case No**: 23-6241-GEB

**brettmorgan8387@gmail;**
**brettmorgan777@gmail.com;**
**brettmorgan0811@gmail.com; and**
**dsmith8387@gmail.com**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Travis Putrah, being duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent ('SA') with the Department of Homeland Security's ('DHS'),

Homeland Security Investigation ('HSI') and have been so employed since September 2019.

  a.    I am currently assigned to the Internet Crimes Against Children's ('ICAC')
        Task Force in Wichita, Kansas.   I am responsible for investigating
        technology-facilitated child sexual exploitation crimes that occur
        throughout the state of Kansas.

  b.    As part of my assignment, I have been involved in many child exploitation
        investigations and have assisted federal and state partners during their
        investigations involving the sexual exploitation of child; to include the
        possession, distribution, receipt and/or production of child pornography.

  c.    As such, I have become familiar with ways that child pornography is shared,
        distributed, and/or produced, including the use of various social medial
        websites and messaging applications (Google, Kik, Instagram, Facebook,
        Kik, Discord, iCloud, Telegram, etc.) and cloud-based storage services.

  d.    As part of these investigations, I have participated in the gathering of
        evidence pursuant to search warrants, drafted and executed search warrants
        on electronic service providers, received training on the handling of
        electronic evidence, and conducted interviews of persons who possess,
        distribute, and/or produce child pornography.

  e.    Prior to my tenure as a SA with HSI, I was employed as a Border Patrol
        Agent within the DHS from 2005 to 2019.  From 2015 to 2018, I was

assigned to the Federal Bureau of Investigations' ('FBI') Indian Country Task Force in Bemidji, Minnesota.  My duties included investigating crimes of violence, to include homicides and assaults with deadly weapons; sexual assaults of juveniles, human trafficking, illegal trafficking of firearms and explosives; the manufacture, sale, and distribution of controlled substances; trafficking of child pornography; money laundering; arson; and the disruption/dismantling of violent gangs.

f.     From 2018 to September 2019, I was assigned to the HSI Wichita, Kansas office as a Task Force Officer ('TFO').  While serving as an HSI TFO, I was responsible for investigating federal violations of the trafficking of controlled substances; the production and sale of fraudulent documents; violations of immigration law; the theft of intellectual property; and the trafficking of child pornography.

g.     As a requirement for employment as an HSI Special Agent, I successfully completed a twelve-week Criminal Investigator Training Program ('CITP') located at the Federal Law Enforcement Training Center ('FLETC') in Glynco, Georgia.  At the conclusion of CITP, I also completed an additional twelve-week HSI Special Agent Training ('HSISAT') Academy.  As part of the training at FLETC, I received extensive instruction in the areas of Customs law, Immigration law and Criminal law.

## PURPOSE OF THE AFFIDAVIT

2.     I submit this affidavit in support of an application, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, for a warrant authorizing the search of the following Google accounts:

a.     **brettmorgan8387@gmail.com**

b.     **brettmorgan777@gmail.com**

c.     **brettmorgan0811@gmail.com**

d.     **dsmith8387@gmail.com**

collectively referred to as the "**Target Accounts**," as described in Attachment A, for contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252A(a)(5)(B), which items are more specifically described in Attachment B of this Affidavit.

2

3.      The statements in this Affidavit are based in part on information provided by other law enforcement officers and on my investigation of this matter.  Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have only set forth only the facts that we believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2251(a), (production of child pornography); and 18 U.S.C. § 2252A(a)(5)(B), (possession of and access with intent to view child pornography); are presently located within the Target Accounts specifically described in Attachment A.

## STATUTORY AUTHORITY

4.      As noted above, this investigation concerns alleged violations of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252A(a)(5)(B) relating to material involving the sexual exploitation of minors:

a.      18 U.S.C. § 2251(a) prohibits employing persuading, inducing, enticing, and coercing, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

b.      18 U.S.C. § 2252A(a)(2) prohibits knowingly receiving or distributing any child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer.

c.      18 U.S.C. § 2252A(a)(5)(B) prohibits knowingly possessing, or accessing with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

3

## DEFINITIONS

5.   The following definitions apply to this Affidavit and Attachment B:

a.   "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

b.   "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c.   "Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

d.   "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(1).

e.   "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units; internal and peripheral storage devices such as fixed disks; external hard drives; "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer; and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

f.   "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer

4

software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

g.     "Hyperlink," as used herein, refers to an item on a web page or in a mobile application which, when selected, transfers the user directly to another location in a hypertext document or to some other web page or (part of) a mobile application.

h.     "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

i.     An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

j.     The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

k.     "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

l.     "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

m.     "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or

opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

n.   A "storage medium" is any physical object upon which computer data can be recorded.  Examples include hard disks; RAM; "thumb," "jump," or "flash" drives; CD/DVDs; and other magnetic or optical media.

o.   "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address.  URLs are made of letters, numbers, and other symbols in a standard form.  People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a web browser to make the computer fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

p.   "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

6.    On or about July 4, 2023, Wichita Police Department ('WPD') Detective Jonathan Elledge, assigned to Exploited and Missing Children's Unit ('EMCU'), was assigned to investigate the sexual assault of Minor Victim 3.  MV3 has been identified as a minor residing in Wichita, Kansas, and would have been under the age of ten and prepubescent at the time of the sexual assault.

7.    According to reports, MV3 disclosed to MV3's mother that Brett Anthony MORGAN ('MORGAN') had licked MV3's "private."  MORGAN began babysitting for MV3 on or about June 1, 2023.  MORGAN had been babysitting MV3 at his residence, located in Wichita, Kansas.  Minor victim 1 (MV1), who is under the age of 10 years old, often resides at the residence with MORGAN.  MV3's mother immediately made a report with the WPD.

8.      On or about July 4, 2023, MV3 was forensically interviewed at the Child Advocacy Center of Sedgwick County (CAC).   During that forensic interview, MV3 disclosed that MORGAN licked MV3's "private" more than one time at MORGAN's residence.   MV3 was shown an anatomical diagram of a child and identified the genitalia on the diagram as the "private."

9.      MV3 disclosed that MORGAN pulled MV3's pants and underwear down, used his hands to spread MV3's legs, and used his tongue to lick MV3's private.   MV3 disclosed that MORGAN's tongue went "inside" MV3's genitalia.

10.     MV3 disclosed that MV3 tried to keep their legs together on one occasion and that MV1 helped MORGAN spread MV3's legs apart.

11.     MV3 disclosed that MORGAN had exposed his penis to MV3 and asked MV3 and MV1 if they wanted to suck and play with his penis.

12.     MV3 also disclosed that MORGAN has asked to take a photograph of MV3's "private" with his cellular telephone.   MV3 also stated that MORGAN had recorded MV3, while clothed, using his cellular telephone.   MV3 described MORGAN's cellular telephone as being red and black.

13.     MV3 disclosed that when MORGAN licked their "private", it occurred on MORGAN's living room couch and the living room floor.

14.     On or about July 4, 2023, MV1 was forensically interviewed at the CAC.   MV1 disclosed that MV1 witnessed MORGAN attempt to touch MV3's genitalia at MORGAN's residence while MV3 and MV1 were in bed together.   MV1 disclosed that MV1 taught MV3 how to cover themselves up when MORGAN tried to touch their genitalia.   MV1 demonstrated this by hold their arms in such a way as to cover their chest and genitalia.

7

15.    On or about July 4, 2023, Detectives interviewed MORGAN at the CAC. Detectives observed that the cellular telephone MORGAN had in his possession was in a red and black case as described by MV3.  MORGAN declined to be interviewed without a lawyer present. Detectives seized MORGAN's cellular telephone to prevent the destruction of evidence.  On July 5, 2023, Detectives obtained and executed a search warrant on MORGAN's black Samsung A53 mobile phone in a red and black case.

16.    On or about July 6, 2023, the Kansas Internet Crimes Against Children ICAC digital forensic unit ('DFU') forensically examined MORGAN's cellular telephone.  During a review of the extracted content, detectives located the following child exploitation videos and images:

     a.    File "1674957420208" is a video file approximately 22 minutes and 41 seconds in length.

         i.    The video has a timestamp of January 28, 2023.  The video shows MV1 and Minor Victim 2 ('MV2') in a bathtub inside MORGAN's residence.  Both minors are naked inside the bathtub.  MV1 starts to touch MV2 genitals. MV2 tells MV1 to stop. MV1 asks, "What did you feel?"  MV2 states, "I felt you trying to F-me."  MV1 states, "We're supposed to do stuff".  MV2 states, "We don't have to".  MV1 states, "I told [MORGAN] to make that a rule".  MV2 states, "[MORGAN] told me to do [unintelligible] and I already completed it.  I already completed what [MORGAN] told me to do."  MV1 states, "Yeah but I think he meant more stuff."  MV1 begins to move soap bubbles away from MV2's genitals.  MV2 tells MV1 to stop. MV2 covers their genitals with their hand and states, "only I get to touch it".  MV1 asks MV2, "what can I touch on you".  MV2 tells MV1 that they can touch their legs.  MV1 asks MV2 if they can touch MV2's butt.

        ii.    MORGAN enters the room and begins to assist MV2 with rinsing their hair.  MORGAN begins to comb MV2's hair with a hairbrush. While combing the hair, MORGAN places the hairbrush in-between MV2's legs near their genitals.  MV2 screams, "Stop! Stop aiming for that." MORGAN puts the hairbrush in-between MV2's legs near MV2's genitals three more times.  Each time MV2 tells MORGAN

8

to stop.  MV2 asks MORGAN why he continues to aim specifically for their genitals and MORGAN responds that he does not know.

iii.    MORGAN asks MV1 and MV2 if they have looked in the "light" to see if they have "hair there" referring to the minor's pubic hair. MORGAN points at the video camera and states, "the light's right there, so you can see it better."  MORGAN directs MV1 to use the light to look for pubic hair.  As set forth below in paragraph 32 (i), law enforcement found a wireless light bulb camera during the search of MORGAN's home.

iv.    MV1 stands on the side of the bathtub to get close to the "light." MV1 spreads their legs and displays their genitals to the video camera.

v.    MORGAN directs MV1 to get down and directs MV2 to use the "light" to look for pubic hair.

vi.    MV2 stands on the side of the bathtub to get close to the "light." MV2 displays MV2's genitals to the video camera.

vii.    MV2 exits the bathtub and begins to dry off.  MORGAN asks MV2 if they looked in the light for pubic hair.  MV2 states that they have. MORGAN asks to see MV2's genitals to look for pubic hair.  MV2 states that MORGAN is not their father.  MORGAN states that he is only looking and will not touch their genitals.

viii.    MORGAN directs MV2 to get back into the bathtub and look for pubic hair using the "light".  MV2 stands on the side of the bathtub to get close to the "light" and displays their genitals to the video camera.

ix.    MORGAN directs MV2 to spread their genitals.  MORGAN states, "Pull it up and spread it, let me see.  Cause it looks like you got some right there too.  Spread it open."  MV2 spreads their genitals in front of the camera.  MORGAN's finger can be seen in the video pointing at MV2's genitals and directing MV2's actions.

x.    MV2 tells MORGAN that they are having a hard time bending to display their genitals to "the light".  MORGAN states, "you can lay on the floor and do it."

b.    The ICAC digital forensic examiner also located 6 child exploitation images on MORGAN's cellular telephone.  One of those files, file "0115232324b" shows a close-up of a prepubescent female child's vagina.  Hands are spreading the child's labia apart, showing the vulva and vaginal opening.

    i.  According to the images' meta data, the image was captured using an LG LM-V600 cellular telephone.  As set forth below in paragraph 32(c), a similar make and model LG phone was seized during the search of MORGAN's residence.

   c.  Additional screen captures or screenshots of MV2 undressing were located on MORGAN's telephone.

    i.  According to the image's meta data, the image was created using an LG LM-Q720 cellular telephone.  As set forth below in paragraph 32(c), a similar make and model LG phone was seized during the search of MORGAN's residence.

  17.  DFU located the child exploitation images and videos in a hidden folder within the Google Photos application.  Investigators observed that the Google account "brettmorgan8387@gmail.com" was associated with MORGAN's Samsung A53.  Additionally, Investigators noted that MORGAN had set his mobile phone to backup images and videos to his Google Drive account[1].

  18.  While analyzing MORGAN's Samsung A53 mobile device, investigators noted that MORGAN had also utilized Google accounts brettmorgan777@gmail.com, brettmorgan0811@gmail.com, and dsmith8387@gmail.com in the past.

  19.  More specifically, when analyzing applications that had been used on MORGAN's cellular telephone, investigators noted that MORGAN had used all the Target Accounts (dsmith8387@gmail.com;  brettmorgan8387@gmail.com;  brettmorgan777@gmail.com;  and brettmorgan0811@gmail.com) to log into the application Dropbox that was installed on his phone.

  20.  During the analysis of MORGAN's cellular telephone, investigators noted that MORGAN utilized the number "8387" both as a passcode to access his cellular telephone and referenced it in many of his usernames (brettmorgan8387 and dsmith8387).

---

[1] Google drive is a file storage service provided by Google.  Google Drive allows users to store files in the cloud, synchronize files across different devices, and share files with other users.

21.     During the examination of the data extracted from MORGAN's telephone, the application "Feit Electric" was located.  Inside the application, a profile for a "bulb camera" was observed.

22.     According to the developer, the Feit Electric application can control and manage your LED Smart Wifi bulb from anywhere using the application.

23.     DFU   also   located   a   cached[2]   image   with   a   file   path "data/com.feit.smart/cache/Camera/Cover."  It was found to be associated with the Feit Electric application.

24.     This cached image is a captured image, similar to a screenshot, from a video.  It appears to have the same or similar characteristics observed in the video set forth above in paragraph 16(a).

25.     The cached image appears to be a single image of a video recording of MV1 and minor victim 5 (MV5).  MV1 and MV5 are naked and in MORGAN's bathtub.  The timestamp "April 6, 2023" can be seen in the cached image.

26.     Investigators have identified MV5 and learned that they would have been under the age of 12 at that time.  Additionally, MORGAN had access to MV5 at his residence beginning on or about March or May of 2021.

27.     Forensic examiners did not locate a video on MORGAN's device that matched the cached image set forth in paragraph 23-25.

---

[2] Cache – is the location where a device stores images, code, and other files to help a device run faster.  An image/video cache will remain in the cache folder even after a user deletes the original image/video file from the device.  Cache images are not typically viewable to the device user and usually found in the device's file system.

11

28.     The discovery of this cached image has led investigators to believe that it is probable that additional child exploitation videos were produced by MORGAN utilizing the light bulb camera or other device.

29.     Investigators have also located additional cached images with a file path of "data/com.google.android.apps.photos/cache/glide_cache/".  This indicates that these images were associated with the Google Glide photo manager on the device and that at one point in time the photo was located on the device itself.  Since investigators have determined that MORGAN had his mobile devices set to back up images, videos, and media to his Google account, I believe it is probable that the images that were in the photo manger were saved/backed up to the Target accounts.

30.     On or about July 6, 2023, investigators submitted a formal preservation letter to Google requesting that records associated with the Target Accounts be preserved.

31.     On July 6, 2023, law enforcement executed a search warrant, issued in the 18th judicial district court of Sedgwick County, Kansas; reference case number 23C070549; on MORGAN's residence in Wichita, Kansas.

32.     The following items of evidence were located and seized from the residence on or about July 6, 2023:

    a.     Front porch light camera.

    b.     Black video camera installed on the kitchen wall.

    c.     Eleven (11) cellular telephones; to include but not limited to:

        i.     An LG cellular telephone of similar make and model to the cellular telephone used to capture the above-listed child exploitation images referenced above in paragraph 16(b);

    ii.      An LG cellular telephone of similar make and model to the cellular telephone used to capture the child exploitation image referenced above in paragraph 16(c);

    iii.      A Samsung model SM-G991U capturing live video from the front porch.

d.      One HP laptop.

e.      Three (3) tablets;

    i.      1 Blu model M8L 2002;

    ii.      1 Intel Nextbook, and

    iii.      1 Ellipsis tablet.

f.      One (1) Toshiba external hard drive.

g.      One (1) Sandisk secure digital (SD) memory card.

h.      One (1) Sandisk Cruzer thumbdrive.

i.      A Feit Electric Wireless Light bulb camera.  A smart Wi-Fi camera is integrated into the LED bulb.

    i.      A stock image that looks identical to the light bulb seized is provided below.



    ii.      According to the manufacturer's documentation for the light bulb camera, it connects to devices using a wireless signal.  Additionally, the light bulb camera can store recorded video using a MicroSD card.

13

33.     During the search of the residence, law enforcement observed a floor lamp inside the bedroom attached to the bathroom where the video set forth in paragraph 16(a) had been produced. Investigators moved the floor lamp and placed in on the floor next to the bathtub. The floor lamp appeared to have been set at the same height and angle in which the bathtub videos were produced.

34.     On or about July 12, 2023, minor victim 2 (MV2) was identified by law enforcement and forensically interviewed at the CAC. Investigators learned at that time that MV2 would have been under the age of 12 at the time video "1674957420208" (video from paragraph 16(a)) was produced. During the forensic interview, MV2 identified themselves and MV1 in the video described in paragraph 16(a). MV2 also identified MORGAN in the video described in paragraph 16(a). MV2 stated that they did not know they were being recorded while in the bathtub. MV2 stated that there was a floor lamp where the camera was positioned. MV2 provided a description of the floor lamp. MV2 stated that they did not know there was a camera there and stated that they always look for cameras because they are afraid of being watched. MV2 also identified the comb used by MORGAN in the video described in paragraph 16(a).

35.     MV2's description matches the description of the floor lamp previously observed at MORGAN's residence during the execution of a search warrant on July 6, 2023. On or about July 13, 2023, law enforcement executed a second search warrant at MORGAN's residence and seized the floor lamp and multiple hairbrushes and combs.

36.     On or about July 21, 2023, HSI executed federal search warrants on the devices seized from MORGAN's residence, referenced in paragraphs 32 (a-i). ICAC's DFU began their analysis of those devices. During the analysis, the following observations were made.

37.     During the analysis of the LG V60 ThinQ 5G mobile phone, investigators observed that MORGAN's Google account "**brettmorgan8387@gmail.com**" was associated with this device.  This is the same Google account associated to MORGAN's Samsung A53 mobile device referenced in paragraph 17.

38.     Investigators located child pornography believed to have been produced by MORGAN.  These videos appear to be the same or similar to the child pornography videos referred to in paragraph 16(a).

39.     Investigators also located the Feit Eletric application installed on the device.  This application appears to be the same application referenced in paragraph 22 that is believed to have been used in the production of the child pornography.

40.     Investigators located a Calculator application installed on the LG V60 ThinQ 5G mobile device.  This calculator application can be utilized to hide files or pictures on mobile devices.

41.     Investigators located cached child pornography images within the Calculator application that appeared to be similar to the images located on MORGAN's Samsung A53 mobile device referred to in paragraph 16(b).

42.     Investigators noted that the LG V60 ThinQ 5G mobile phone was set to backup images and videos to Google account **brettmorgan8387@gmail.com**.  Additionally, it appears that multiple images were backed up to MORGAN's Google account from this device.

43.     During the analysis of the LG LM-Q720CS mobile phone, investigators observed that MORGAN's Google account, "**brettmorgan777@gmail.com**" was associated with this device.  This is one of the accounts referenced in paragraph 18.

44.     Investigators located images in the mobile device's gallery cache that appear to be the same or similar to the child pornography located on MORGAN's Samsung Galaxy A53 referred in paragraph 16.

45.     Investigators also noted that MORGAN had set this mobile phone to backup images and videos to his Google Drive account.  Additionally, it appears that multiple images were backed up to MORGAN's Google account from this device.

46.     Due to the large number of devices seized from MORGAN's residence, ICAC DFU investigators are still diligently working on analyzing all the mobile and electronic devices at this time.

47.     Based on the foregoing information, I believe there is probable cause to believe that MORGAN has utilized the Target Accounts to further his crimes of production and possession of child pornography.   I believe that if permitted to search, investigators will locate additional contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252A(a)(5)(B) within the Target Accounts.


**BACKGROUND ON GOOGLE
AND THE RECORDS HELD BY THE PROVIDER**

48.     In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("e-mail") access, to the public.  Google allows subscribers to obtain e-mail accounts at the domain name gmail.com, like the e-mail account listed in Attachment A.  Subscribers obtain an account by registering with Google.  During the registration process, Google asks subscribers to provide basic personal information.  Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Google subscribers) and information concerning subscribers and their use

of Google services, such as account access information, e-mail transaction information, account application information, calendar information, photographs or other media files, GPS location data, and other records. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Conversely, it could also help assist investigators ascertain who doesn't use a specific email account.

49. A Google subscriber can also store with the provider files in addition to e-mails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

50. I am also aware that Google has location services that captures the user's GPS data for different purposes and can provide these records upon request from a court of competent jurisdiction.

51. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. However, I am aware that Google may not verify the accuracy of some of the information users provide when subscribing to Google's free services. Google may

also maintain payment information for the customer, including billing address, financial information, name, or other identifying information.

52.      In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

53.      In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## CHARACTERISTICS OF PEOPLE WHO EXPLOIT CHILDREN

54.     Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who produce child pornography, utilize the internet to facilitate the production of child pornography, and access online child sexual abuse and exploitation material via a website or via file-sharing:

a.     Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.     Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.     Such individuals almost always possess and maintain child pornographic material in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain those materials and child erotica for many years.

d.     Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e.     Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they

do their sexually explicit material, and often maintain contact information (e.g. online messaging accounts, email addresses, etc.) of individuals with whom they have been in contact and who share the same interests in child pornography.

f.  Such individuals prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g.  Individuals with a sexual interest in children often have had, or continue to maintain, multiple email and social media accounts. It is common for such individuals to control multiple email addresses in their attempts to remain anonymous or thwart law enforcement's efforts to investigate their illicit activity. Some individuals will create an account to imply that they are of a different age or sex depending on what their online intentions are, or to pose as a person a potential victim already knows. Some individuals with a sexual interest in children will open multiple accounts, whether they be for email, social media or remote storage, with common denominators that can be identified by the host company that operates that medium. For example, a person with a sexual interest in children may create and maintain several different email accounts but use the same email address as a "recovery" or "verifier" email account. Those individuals will use the same technique for new social media, email or virtual storage accounts when their original ones are compromised or shut down.

h.  Individuals with a sexual interest in children often maintain contact information from their trusted sources or like-minded individuals. They also block, cancel or "unfriend," contacts that they perceive pose a threat to their illegal activity or have not maintained good standing. For example, another individual with a sexual interest in children, but preferred children of a different age range or ethnicity, might be blocked by the other. They may also block a person who threatens to contact a parent or the police about their online activity. Likewise, a victim of coercion, enticement and/or sexual exploitation may block a suspect who is attempting to further victimize them.

i.  Additionally, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes have a collection of child pornography and will ask children to take and send naked images of themselves that would constitute child pornography as well as child erotica.

j.  Furthermore, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I

am aware that individuals who have a sexual interest in children will oftentimes utilize social media and other online services to meet and communicate with minors. Individuals with a sexual interest in children know that social media allows for seemingly anonymous communication which they can then use to groom the minors and set up meetings in order to sexually exploit them.

55.     Based on the type of child pornography located on MORGAN's mobile devices, I believe that MORGAN has an affinity and predilection for exploiting prepubescent minor children.

56.     I believe that MORGAN has shown the capability of utilizing specialized means and knowledge to produce that child pornography, like a Feit Electric Wireless Light bulb camera or similar device.

57.     As stated in paragraph 54(d) and 54(i), people who exploit children will oftentimes have a collection of child pornography and maintain those collections in secure storage locations. I believe that it is probable MORGAN is utilizing his secure Google Drive and Google accounts for those purposes.

58.     Investigators have observed that MORGAN was utilizing his Google Accounts to back up and store photographs, videos, and media in his Google Drive cloud storage.  I believe that it is probable that child pornography located on MORGAN's device was backed up, and is stored, in the Target Accounts.

59.     Investigators also located evidence that MORGAN produced additional videos that were not located on his device.  I believe that it is probable that additional child pornography not located on MORGAN's mobile devices will be located within those Target Accounts.

60.     As stated previously in paragraph 54(g), people who exploit children commonly utilize multiple accounts to assist them in their exploitation of children.

61.     Google advertises that their Google Drive account can be utilized to easily synchronize files across multiple devices.  Additionally, I believe that MORGAN has shown a propensity to utilize multiple Google Accounts on multiple mobile devices.

62.     I believe it is probable that MORGAN is utilizing multiple Google Accounts, referred to as the Target Accounts, to assist and further his exploitation of children.

63.     Therefore, I believe that the Target Accounts listed above and in Attachment A are likely to contain evidence of criminal activity further described in paragraph 4; including stored child pornography; messaging involving child pornography; and evidence associated with user attribution for the accounts (such as IP information, registration information, and message content that may explain who operated the account at a given time).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

64.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

65.     Based on the foregoing, I believe there is probable cause that Brett MORGAN has committed violations of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252A(a)(5)(B); and that contraband and evidence, fruits, and instrumentalities of those violations will be located in the Target Accounts.  I therefore respectfully request that the Court issue a warrant authorizing search of the

Target Accounts, further described in Attachment A, for the items listed in Attachment B, and authorizing the examination and seizure of any such items found.  I further request that the Court authorize execution of the warrant at any time of day or night as the service provider will comply with the warrant at their convenience and without any physical intrusion upon any person or place.

Respectfully submitted,

Travis Putrah
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on the _____ of September 2023.

THE HONORABLE GWYNNE E. BIRZER
UNITED STATES MAGISTRATE JUDGE

23

## ATTACHMENT A

**Accounts to Be Searched**

This warrant applies to information associated with the following Google accounts:

    a.    **brettmorgan8387@gmail.com**

    b.    **brettmorgan777@gmail.com**

    c.    **brettmorgan0811@gmail.com**

    d.    **dsmith8387@gmail.com**

and collectively referred to as the **Target Accounts** which are stored at a premises owned, maintained, controlled, or operated by Google LLC ("Google" or "Provider"), headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Google receives legal process via their Law Enforcement Portal.

## **ATTACHMENT B**

## **Particular Things to be Seized**

**I.      Information to be disclosed by Google LLC, to the government:**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose to the government for each account or identifier listed in Attachment A the following information for the time period of account inception, to the date of the execution of the search warrant:

1.      All business records and subscriber information, in any form kept, pertaining to the Accounts, including:

a.      Names (including subscriber names, usernames, and screen names);

b.      Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

c.      Telephone numbers, including SMS recovery and alternate sign-in numbers;

d.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

e.      Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

f.      Length of service (including start date and creation IP) and types of service utilized;

g.      Means and source of payment (including any credit card or bank account number); and

h.      Change history.

2.      All device information associated with the Accounts, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

3.      Records of user activity for each connection made to or from the Accounts, including, for all Google services, the date, time, length, and method of connection, data transfer volume, usernames, source and destination IP address, name of accessed Google service, and all activity logs.

4.      The contents of all emails and chat messages associated with the Accounts, including stored or preserved copies of emails or chat messages sent to and from the Accounts, draft emails, the source and destination addresses associated with each email or chat message, the date and time at which each email or message was sent or received, attachments to any e-mail or message sent or received, the size and length of each email, and true and accurate header information including the actual IP addresses of the sender and recipients of the emails.

5.      The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record.

6.      The contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses.

7.      All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

8.      The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft

messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history.

9.      Any records pertaining to the user's contacts, including address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history.

10.      Any records pertaining to the user's calendar(s), including Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history.

11.      Payment information, including billing address, shipping address, and payment instruments, associated with any Google Pay, Google Wallet, or Google service used by the Account.

12.      All records pertaining to communications between Google and any person regarding the Account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.      Information to be seized by the government:**

1.      All information described above in Section I that constitutes contraband or evidence, fruits, or instrumentalities of violations of 18 U.S.C § 2251(a) – *Sexual Exploitation of Children* and 18 U.S.C. § 2252A(a)(5)(B) – *Possession of or Accessing with Intent to View Child Pornography*, collectively referred to as the **"Target Offenses,"** for the time period of account inception, to the date of the execution of the search warrant, including the following:

a.     Messages, communications, records, and files associated with or attached to email or chat messages, and transactional data that constitute evidence of, or that may have been used to facilitate, or that were capable of being used to commit or further, violations of the **Target Offenses** and to create, access, or store evidence of such crimes.

b.     Images, videos, and other files depicting children fully or partially naked and/or engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

c.     Communications that pertain to or that are evidence of the production, advertisement, distribution, receipt, or possession of child pornography, or accessing with the intent to view child pornography, that involve the coercion of a minor, or that involve threatening or intimating language of any person consistent with cyberstalking.

d.     Information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

e.     Information indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner.

f.     Information indicating the Account owner's and user's state of mind as it relates to the crimes under investigation.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits,

and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the HSI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**III.     Directions on production of child sexual abuse imagery by Google:**

1.     Pursuant to Google's Law Enforcement Portal, any legal request that requests that Google produce content that includes child sexual abuse imagery should include detailed directions from the court as to how Google should handle the production.   As such, Notwithstanding Title 18, United States Code, Section 2252A, Google shall disclose responsive data, if any, by delivering encrypted files through Google's Law Enforcement Request System.